625 A.2d 1242

COMMONWEALTH of Pennsylvania, Appellant,

v.

Oscar CAMACHO, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Hector CAMACHO, Appellee.

Superior Court of Pennsylvania.

Argued March 11, 1993.

Filed June 1, 1993.

Peter J. Gardner, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Andrew G. Gay, Philadelphia, for Oscar Camacho, appellee.

Before CAVANAUGH, JOHNSON and HOFFMAN, JJ.

CAVANAUGH, Judge.

This is an appeal from an order of the Court of Common Pleas of Philadelphia County which suppressed all the physical evidence seized by police at or near 2853 North Fourth Street in Philadelphia. The Commonwealth raises two issues on appeal: (1) the lower court erred in failing to find exigent circumstances for the police to search an automobile used for storing drugs at the 2800 block of North 4th Street and (2) the police lawfully entered 2853 North 4th Street. Our review indicates that the Commonwealth's first argument has merit,

as the lower court has failed to apply the import of recent cases interpreting the automobile exception to the warrant requirement. However, we can not rule for the Commonwealth on the second issue, as the lower court as finder of fact and determiner of credibility found the search of the house illegal. We affirm in part, reverse in part.

This is a consolidated Commonwealth appeal from an order of the Hon. Anne Lazarus granting the motion to suppress of appellees Hector Camacho and Oscar Camacho. Both appellees were arrested for possession of controlled substances, possession with intent to deliver controlled substances, and criminal conspiracy. As the suppression court made certain findings of fact and credibility determinations which have pertinence to our analysis, we will discuss the relevant testimony proffered at the suppression hearing.

At the suppression hearing, Officer Thomas Clarke of the East Police Task Force testified that he had set up surveillance of the 2800 block of North 4th Street, Philadelphia, PA at approximately 6:30 p.m., on September 18, 1991. Apparently, Officer Clarke acted as the sole observer and was assisted by back-up units in the area. He testified that his observations were made from a nearby second floor, which he could not identify because of its confidential nature. His surveillance location, he testified, was no less than fifty and no more then seventy feet from the relevant action in this appeal.

During the course of his surveillance, Officer Clarke testified he saw several unidentified white and black males approach Hector Camacho, who was standing in the middle of the street in front of 2859 North 4th Street. Officer Clarke stated that each time a male would approach, Hector Camacho would walk over to a silver Toyota parked in front of 2859 or 2861 North 4th Street, reach into the passenger door, and retrieve an "object." Hector Camacho would then exchange the object with male for something that looked like currency. On cross-examination, Officer Clarke conceded that he was not sure that money was actually transferred or that the "objects" were drugs. However, he did testify that given his many

years of experience, he was virtually positive that Hector Camacho was selling drugs.

After several of these transactions, Officer Clarke testified that he notified his backup. Before his backup arrived, Hector Camacho walked to 2853 North 4th Street. As soon as he got there, a door opened and a Hispanic male, later identified as Oscar Camacho, came out and stood on the top step. Hector Camacho handed something to Oscar Camacho from his right hand pocket. He then proceeded to walk back towards the silver Toyota, where he began to pace back and forth.

The back up unit that arrived shortly thereafter consisted of Sergeant Brian Gessner and Officer James Henninger. Both officers arrested Hector Camacho, and then Sergeant Gessner proceeded to 2853 North 4th Street. Sergeant Gessner claimed that the front gate at that residence was open, as was the doors to the house. Oscar Camacho, he testified, was right inside the doorway, and he turned back into the house and fled at Gessner's approach. Sergeant Gessner then stated he chased Oscar Camacho through the living room and kitchen into an adjoining shed at the back of the house. After capturing Oscar Camacho, Sergeant Gessner testified that he saw in plain view on the floor of the shed a clear, plastic bag of cocaine and two bundles of heroin. Thereafter, after a Spanish interpreter was sent for, the appellees' mother, Luz Camacho, signed a written consent to search the house. During this search, the police seized extensive drug paraphernalia.

The appellees presented testimony that the arrest of Oscar Camacho did not occur in the shed as the police claimed. Oscar Camacho claimed to be sleeping in the third floor room of his mother's house when a police officer entered the room. According to this defendant, the officer took him into the living room, pushed him against the wall and held him there. Luz Camacho also gave testimony that could be construed to contradict the police version. She testified that she was sleeping on the sofa of her living room. She awakened to find someone struggling with her son. She jumped to her son's aid, but after fully waking, determined that it was the police.

After the conclusion of the parties' presentation at the suppression hearing, the lower court made several determinations. First, the court rendered the specific finding that "there was probable cause to arrest Hector Camacho based upon the articulable facts that the police officer had in his possession at that time." The court, however, ruled that the evidence found in the Toyota must be suppressed because:

there were no exigent circumstances present that would justify the search of a closed car and the search warrant would easily have been obtainable and the police could have safe-guarded that car and, therefore, the evidence obtained from the car was not incident to the arrest of Hector. It was not in his control or within ten feet of Mr. Camacho and, therefore, the evidence taken from the car, is in fact suppressed.

The court went on to suppress the drugs allegedly found in the shed after the arrest of Oscar Camacho, commenting that there may not have been probable cause to arrest him. However, it did not suppress other evidence of drug-related activity found in the house because the court was convinced that the Camachos' mother voluntarily gave her consent to search the house.

The suppression court made the following findings of fact in its October 19, 1992 opinion:

1. The majority of Officer Clarke's testimony was incredible;

2. Officer Clarke summoned back-up officers who arrested the defendant;

3. None of the participants in the alleged exchanges with Hector Camacho have been identified;

4. Police searched a silver Toyota which was parked on the street and a shed on the Camacho property;

5. Search warrants were not requested for either of the searches;

6. Hector Camacho was detained by the police prior to the search of the Toyota;

7. Oscar Camacho was arrested inside his mother's living room;

8. Police testimony describing the apprehension of Oscar Camacho was not credible.

9. Officers obtained a consent to search the house from Mrs. Camacho after the arrest of her sons;

10. Sergeant Gessner retrieved drugs from the shed behind the Camacho residence prior to obtaining Mrs. Camacho's consent to search the house.

After making these findings, the court made the following conclusions of law. First, in reference to the search of the Toyota, the court stated the search did not fall into any exception to the warrant requirement and was thus illegal. Second, in reference to the search of the house and shed, the court asserted that since it found that police testimony as to the apprehension of Oscar Camacho was unreliable, the evidence seized in the house and shed must be suppressed. In direct contrast to its ruling at the suppression hearing, the court suppressed evidence found pursuant to Mrs. Camacho's consent to search her house. Accordingly, pursuant to its rulings, it suppressed all the evidence attained on September 18, 1991. This appeal followed.

We begin with our standard of review:

The well established judicial principle is that in reviewing a suppression court's ruling the appellate court is bound by factual findings supported by the record. [A]nd, [it] may not substitute [its] own findings for those of the suppression court. This principle of deference to trial courts has one important caveat however, appellate courts are not bound by findings wholly lacking in evidence.

\*　　\*　　\*　　\*　　\*　　\*

[W]here the Commonwealth is appealing the adverse decision of a suppression court, a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence of the prosecution as read in context of the record as a whole remains uncontradicted.

*Commonwealth v. Hamlin,* 503 Pa. 210, 469 A.2d 137, 138–139 (1983), *as quoted in Commonwealth v. Lagamba,* 418 Pa.Super. 1, 3, 613 A.2d 1, 2 (1992).

Preliminarily, we note that the court made credibility determinations in the case *sub judice.* We have held in circumstances other than a suppression hearing as follows:

> A reviewing court is bound by the lower court's determination of issues of credibility, unless said determination is a manifest error. *Leibowitz v. Ortho Pharmaceutical Corp.,* 224 Pa.Super. 418, 307 A.2d 449 (1973). Issues of credibility are resolved through personal observation; therefore, absent clear and manifest error, a lower court's assessment of witnesses' integrity is not properly reversible on appeal. *Shawcreaw v. Shawcreaw,* 248 Pa.Super. 223, 375 A.2d 68 (1977); *Re Estate of Duncan,* 426 Pa. 283, 232 A.2d 717 (1967).

*Commonwealth v. Smith,* 322 Pa.Super. 504, 511, 469 A.2d 1104, 1109 (1983); *accord Commonwealth v. Paquette,* 451 Pa. 250, 257, 301 A.2d 837, 841 (1973). We have not found a case which articulates a different standard than the one *supra* for evaluating a credibility determination made by a suppression court. As we believe that credibility at a suppression hearing is an important determination best resolved through the court's personal observations, we will not reverse a suppression court's assessment of credibility absent clear and manifest error.

The Commonwealth makes two arguments before this court: (1) the lower court erred in suppressing drugs seized pursuant to a search of an automobile where the police had probable cause to suspect the vehicle contained contraband and (2) the lower court erred in suppressing drugs seized from the appellants' residence where the police lawfully entered the house to effect an arrest and then saw the drugs in plain view. We address the Commonwealth's later argument first, as it presents less difficulty given our standard of review and deference to the suppression court's role as fact finder and evaluator of credibility.

The Commonwealth's second argument asserts that the lower court erred in suppressing the drugs seized in the house. The Commonwealth claims that probable cause existed to arrest Oscar Camacho because the police witnessed him receiving proceeds from drug sales. Although the Commonwealth admits that the police entered the residence at 2835 4th Fourth Street without a search warrant and arrested Oscar Camacho inside, it contends that the entry was justified by the "hot pursuit" exception to the warrant requirement. The Commonwealth avers that Oscar Camacho was allegedly pursued from his doorway through his living room and kitchen, and into a shed in the back of the residence, where he was captured. While in the shed, the police allegedly saw drugs in "plain view" in the adjoining shed. Thus, the Commonwealth concludes, a warrant was unnecessary.

We find it unnecessary to address the Commonwealth's strained explanation of how this seizure of evidence was fully justified. The Commonwealth has the burden of establishing at a suppression hearing that the challenged evidence was not obtained in violation of a defendant's Constitutional rights. Pa.R.Crim.P. 323(h); *Commonwealth v. Bonasorte*, 337 Pa.Super. 332, 344, 486 A.2d 1361, 1368 (1984). The suppression court specifically determined that "[p]olice testimony describing the apprehension of Oscar Camacho was not credible." Given this determination, and its finding that Sergeant Gessner retrieved drugs from the shed behind the Camacho residence *prior* to obtaining Mrs. Camacho's consent to search the house, there is no grounds for reversal as to the evidence suppressed in the house and the shed.

The Commonwealth attempts to avoid the natural meaning of the court's credibility determination as to Oscar Camacho's apprehension by claiming that the court's determination was limited to the actual arrest made *inside* the house. The Commonwealth claims that the Court made no ruling as to whether a warrantless entry was justified, and thus implicitly accepted Sergeant Gessner's entry was lawfully made pursuant to the "hot pursuit" exception to the warrant requirement.

We find no support for this view in the suppression court's opinion or in the Record. The Commonwealth contorts that natural meaning of the word "apprehension," attempting to limit its meaning to a certain aspect of Oscar Camacho's capture, the alleged pursuit within the house into the shed. We feel the more natural reading of this word, particularly in light of the suppression court's other findings, is that the court disbelieved the sum of police testimony regarding Oscar Camacho's capture. Thus, the court did not find credible the police testimony regarding the alleged circumstance of a "hot pursuit." As the Commonwealth has not provided the quantum of evidence necessary to reject the court's credibility determination, we affirm the court's suppression of evidence found subsequent to the entry of the house.

We address now appellant's first argument pertaining to the Constitutionality of the Toyota's search. The Commonwealth asserts that the lower court was mistaken in its belief that a warrant was required for the police to search the Toyota, and thus erred in suppressing the fruit of the automobile's search. The Commonwealth asserts that given the lower court's finding of probable cause to arrest Hector Camacho,[1] the search would seem justified in the circumstances *sub judice*. The Commonwealth notes that the police did not develop probable cause until immediately before the opportu-

---

1. The lower court found in its opinion that the majority of Officer Clarke's testimony was incredible. However, this finding apparently had no effect on its prior determination at the suppression hearing that probable cause existed to arrest Hector Camacho. The tenor of the lower court opinion accepts the existence of probable cause to arrest Hector Camacho, yet goes on to find that no exception to the warrant requirement existed such that the police could Constitutionally search the Toyota.

   The court may wish us to read its belated critique of Officer Clarke's credibility as a rejection of its ruling that probable cause existed to arrest Hector Camacho. We are reluctant to do so without an explicit rejection of its conclusion of law at the suppression hearing that probable cause existed. Pa.R.Crim.P. 323(i) requires a suppression court to place on the Record findings of facts and conclusions of law as to whether evidence was obtained in violation of a defendant's rights. The court placed on the Record at the suppression hearing its conclusion of law that probable cause existed, yet neither in its opinion nor Order revoked this ruling.

nity for the search arose. Because an automobile has inherent mobility, the exigent circumstance that someone could abscond with potential evidence by driving the Toyota away justifies the police in searching the automobile without a warrant. The Commonwealth relies on for support, *inter alia, Commonwealth v. Baker*, 518 Pa. 145, 541 A.2d 1381 (1988) and *Commonwealth v. Milyak*, 508 Pa. 2, 493 A.2d 1346 (1985).

We find the tenor of the Commonwealth's argument persuasive. The Pennsylvania Supreme Court has recently reiterated:

> While searches and seizures conducted outside the judicial process, without prior approval by a magistrate, are generally unreasonable under the Fourth Amendment, there is an established departure from the warrant requirement for certain automobile searches based on the inherent mobility of vehicles, with the consequent practical problems in obtaining a warrant prior to infringing a legitimate expectation of privacy, and on the diminished expectation of privacy which is accorded automobiles because of their function, and their subjection to a myriad of state regulations.

*Commonwealth v. Rodriguez*, 526 Pa. 268, 272, 585 A.2d 988, 990 (1991), *quoting Commonwealth v. Milyak*, 508 Pa. 2, 7–8, 493 A.2d 1346, 1349 (1985). Our Supreme Court has declared that vehicle searches conducted without warrants are proper where probable cause is present and certain exigencies exist that making attainment of a warrant impracticable. *Commonwealth v. Baker*, 518 Pa. 145, 148, 541 A.2d 1381, 1383 (1988); *Commonwealth v. Holzer*, 480 Pa. 93, 103, 389 A.2d 101, 106 (1978).[2]

---

2. We note the discrepancy between some of the Commonwealth's past cases and federal cases which speak to automobile searches under similar circumstances as *sub judice*. United States Supreme Court decisions clearly indicates that there exists an "automobile exception" to the warrant requirement. *See, e.g., California v. Acevedo*, 500 U.S. ——, ——, 111 S.Ct. 1982, 1985, 114 L.Ed.2d 619, 627 (1991); *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). This requirement under federal law has developed close to a *per se* rule that whenever the police stop a suspect with probable cause to believe his automobile contains evidence of crime, they may legally search the

In *Baker, supra,* our Commonwealth's Supreme Court found that a search of a vehicle is justified where there exists probable cause to search it and there is inadequate opportunity to obtain a warrant. The pertinent facts in that case were as follows. An informant told the police that he saw an individual in an alley waving a handgun. The informant gave the police the appellant's full name and told them the appellant was wearing a camouflaged hat and was driving an old, beat-up convertible with the top down. Soon thereafter, the police located the individual in his car, and although they lost him for a brief period, they soon found him in a nearby parking lot sitting on steps nearby his automobile. When they

vehicle without a warrant. *Acevedo, supra; Carney, supra.* However, certain past cases in our jurisdiction have declared "that there is no 'automobile exception' as such" under both the United States Constitution and our Commonwealth's Constitution. *See, e.g., Commonwealth v. Holzer,* 480 Pa. 93, 103, 389 A.2d 101, 105 (1978). These cases seem to reach the same result as the federal cases but do so under the rubric "exigent circumstances." See *Baker, supra; Holzer, supra.* We note that the recent majority decision in *Commonwealth v. Rodriguez,* 526 Pa. 268, 585 A.2d 988 (1991) may be read to *sub silento* recognize the existence of the automobile exception. *Compare Commonwealth v. Rodriguez, supra,* at 279, 585 A.2d at 993 (Flaherty, J., Dissenting), which cites *Holzer, supra,* for the proposition that no automobile exception to the warrant requirement exists.

We note that the United States Supreme Court's adherence to the automobile exception to the warrant requirement is illustrated best by *Carney, supra.* In that case, the Court ruled that the Fourth Amendment did not require the police to attain a warrant for searching a motor home located in a non-residential area, notwithstanding the arguably heightened expectation of privacy in a vehicle that could be used as a residence. 471 U.S. at 391, 105 S.Ct. at 2069, 85 L.Ed.2d at 413. The Court based its ruling on two rationales. This Court found that the ready mobility of an automobile justifies a lesser degree of protection of privacy interests. 471 U.S. at 390–91, 105 S.Ct. at 2068–69, 85 L.Ed.2d at 412–13. The Court was particularly concerned that the turn of an ignition key could make the car readily mobile. 471 U.S. at 393, 105 S.Ct. at 2070, 85 L.Ed.2d at 414. It also felt that a person's legitimate expectations of privacy in a motor vehicle are significantly less than that relating to a house or office, due to the pervasive regulation of vehicles capable of driving on the highways. 471 U.S. at 391–93, 105 S.Ct. at 2069–70, 85 L.Ed.2d at 413–14. Given these rationales and their application to a motor home in *Carney,* it is apparent that under federal law the automobile exception is well-established. Pennsylvania cases which claim that federal law does not recognize an "automobile exception," *see, e.g., Holzer,* are simply dated and not in keeping with the tenor of current law.

approached the appellant, he proceeded to jump in his vehicle and began to back out of his parking spot. The police stopped the individual, who proceeded to become quite irate, alite out of his car, and walk around the police verbally abusing them. While appellant was twenty feet from his vehicle and a companion was five feet away, the police succeeded in calming him down and searching, without consent or a warrant, the passenger compartment. The police found the pistol, and the individual was then arrested. Other weapons were found in the car after arrest.

On appeal of an order suppressing evidence related to the search, our Supreme Court found that exigent circumstances were present to excuse the need for obtaining a warrant. *Id.*, 518 Pa. at 149, 541 A.2d at 1383. The police, having obtained information that a crime occurred from a reliable informant, located the suspect within minutes and in the court's view, clearly had probable cause to believe the suspect had possession of a gun. *Id.* The Court then declared as follows:

> This is not a case where the police knew hours in advance that a particular vehicle carrying evidence of a crime would be parked in a particular locale, such that it would have been reasonably practicable to obtain a search warrant before encountering the vehicle to be searched. Rather, the instant search was conducted when police stopped a moving vehicle just thirty minutes after a reported crime. Inasmuch as the requirement of probable cause was satisfied, the exigencies of the mobility of the vehicle and of there having been inadequate time to obtain a warrant rendered the search proper.

*Id.* (citations omitted). Our Supreme Court went on to specifically reject the argument that the police had to immobilize the vehicle until a warrant could be obtained. *Id.* It declared that it was not clear that immobilization is any less intrusive to privacy interests than searching the vehicle. It concluded that its prior rulings afford the conclusion "immobilization has been held to be an alternative, not a requirement." *Id, citing Milyak, supra,* 508 Pa. at 11, 493 A.2d at 1351. It went on to aver:

In short, this case presents a typical scenario where exigent circumstances made it not reasonably practicable to obtain a warrant prior to stopping a vehicle that contained evidence of a crime. Since probable cause to search the vehicle was present, a search warrant was not required, and, thus, the Superior Court properly held the revolver seized during the search to be admissible as evidence.

*Id.*, 518 Pa. at 149–50, 541 A.2d at 1383–84.

The facts of the search *sub judice* are clearly analogous to those in *Baker, supra,* and are encompassed in the principles of law set forth therein. The lower court, recognizing that the police had more than adequate grounds for an arrest and search, found probable cause at the suppression hearing to arrest Hector Camacho.[3] The issue for the court was whether the requirement of a warrant was excused by exigent circumstances or some other exception to the warrant requirement. *Baker* militates in the present case that exigent circumstances be found.

The police, responding to a report of a recent crime, stopped the suspect in *Baker.*[4] The suspect immediately left his car and was twenty feet away from it when the police conducted their search. The police could have before initiating a search, but did not, attain a warrant to search the car. Instead, they immediately searched the car, and upon finding a weapon, arrested the suspect.

**3.** As opposed to *Baker, supra,* where probable cause was derived from a tip from a reliable informant, probable cause was attained by a police officer *actually witnessing* illegal conduct, e.g. drug sales. Officer Clarke testified that he saw Hector Camacho approached several times by individuals in the middle of a street in a high crime area. Hector Camacho would go each time to the passenger compartment of a nearby car and take out objects which he would exchange for cash.

**4.** While it might be argued that a fact significant to Baker's disposition was the suspect's recent exit from his vehicle, we note that Hector Camacho on several occasions entered at least partially into the passenger side to reach for illicit drugs to sell. Moreover, whether a suspect has recently been in a vehicle or not appears to have little to do with the Court's reasoning in *Baker,* which was concerned with the mobility of the vehicle and the inadequate opportunity to attain a warrant due to a developing situation that called for police attention.

Presently, a police officer witnessed ongoing drug transactions which used a nearby automobile to secrete the drugs. When Hector Camacho was arrested, he was nearby the vehicle but not in it. The tenor of the lower court's ruling and opinion is that while the police had the authority to arrest Hector Camacho, and they had probable cause to search the Toyota, they had to obtain a warrant before searching it. We do not think the police in the case *sub judice* are required to immobilize the car or otherwise watch over it while a warrant is obtained. To do so would reject the underpinnings of *Baker*. Like in *Baker*, the police responded to a developing situation that required their immediate attention. The police had probable cause to search the vehicle. The mobility of the car made the attainment of a warrant impracticable, as a potential cohort of the defendant could have driven away with the evidence.[5] To rule against the police we would have to instruct that the vehicle should have been immobilized or watched while a warrant was attained. *Baker* specifically rejected the necessity of this alternative.

A recent case from the Superior Court, although not containing the wisdom of *Baker*, contains facts even more directly analogous to the case *sub judice*. In *Commonwealth v. Jenkins*, 401 Pa.Super. 580, 585 A.2d 1078, (1991), a panel of this Court ruled that a warrant was not needed to search the trunk of a vehicle where the police had probable cause to believe that a suspect was engaging in a crime from his parked vehicle. Similar to this case, the police witnessed a suspect engage in several transactions while using his car as the storage facilities for the drugs. *Id.* at 589–590, 585 A.2d at 1083–84. *See also Commonwealth v. Elliot*, 416 Pa.Super. 499, 502–04, 611 A.2d 727, 729 (1992). We note that subsequent to *Baker*, in *Commonwealth v. Rodriguez*, 526 Pa. 268, 585 A.2d 988 (1991), our Supreme Court reaffirmed the principles that once the requirement of probable cause is satisfied, the exigencies regarding the inherent mobility of the vehicle

---

5. Although we arrive at our decision on other grounds, we comment that a vehicle used as a staging area for open and notorious drug transactions may have a lesser degree of privacy than would normally be afforded it.

and inadequate time to obtain a search warrant can render a warrantless search of a vehicle proper. Accordingly, precedent requires us to reverse the court's suppression ruling as to the evidence found in the Toyota.

For the foregoing reasons, we affirm the lower court's suppression rulings as to evidence found in the house and the shed, and reverse its ruling as to the evidence found in the Toyota.

Order affirmed in part, and reversed in part. Case remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.