J-S48008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KAREEM LUKE, | : | |
| | : | |
| Appellant | : | No. 3152 EDA 2015 |

Appeal from the Judgment of Sentence May 19, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0007750-2014

BEFORE: DUBOW, J., MURRAY, J., and PLATT, J.*

MEMORANDUM BY DUBOW, J.:                    **FILED OCTOBER 18, 2018**

Appellant, Kareem Luke, appeals from the Judgment of Sentence entered by the Philadelphia County Court of Common Pleas following his conviction by a jury of Driving Under the Influence of a Controlled Substance ("DUI") and Driving While Operating Privilege is Suspended or Revoked.[1] Appellant challenges the sufficiency of the evidence and the denial of his Motion to Suppress the results of a blood draw performed while he was unconscious. Because we conclude that, pursuant to **Commonwealth v. Myers**,[2] the Implied Consent Law did not authorize Appellant's blood draw, the suppression court should have granted the Motion to Suppress. Accordingly, we reverse.

---

[1] 75 Pa.C.S. § 3802(d)(1) and 75 Pa.C.S. § 1543(1.1)(iii), respectively.

[2] **Commonwealth v. Myers**, 164 A.3d 1162 (Pa. 2017).

---

* Retired Senior Judge assigned to the Superior Court.

In its Pa.R.A.P. 1925(a) Opinion, the trial court set forth the underlying facts. *See* Trial Court Opinion, filed 7/19/17, at 2-4. Briefly, at approximately 2:00 A.M. on March 29, 2014, Philadelphia Police Officer Scott Amrik saw Appellant fail to stop at a stop sign at 6000 Ditman Street. Officer Amrik pulled Appellant over and called for backup. As he approached Appellant's vehicle, Officer Amrik smelled a strong, distinctive chemical smell he knew from experience to be PCP.

After briefly interacting with Appellant during the traffic stop and observing Appellant's dazed stare, confusion, and delayed responses to questions, Officer Amrik believed that Appellant was under the influence of a controlled substance and unable to operate his vehicle safely. Officer Amrik asked Appellant to step out of his vehicle and attempted to place him in handcuffs. Appellant resisted his arrest and struggled with Officer Amrik, and they both fell to the ground during the struggle. Officer Amrik tased Appellant, but after briefly falling to the ground, Appellant popped up and ran away. Police later found Appellant collapsed at the bottom of basement steps of a nearby building, arrested him, and transported him to the hospital.

Significantly, Philadelphia Police Officer Jimmy Brown interacted with Appellant at the hospital at approximately 3:00 A.M. that same morning. Officer Brown spoke with the other officers about the circumstances of Appellant's arrest and learned that Appellant had been tased by police during a car stop.

Officer Brown observed Appellant lying on a gurney in the emergency room with his eyes closed. Officer Brown did not see any visible signs of injury on Appellant. Seeking Appellant's consent to conduct a blood test, Officer Brown attempted to rouse Appellant by speaking to him and tapping his shoulders. Appellant opened his eyes once, looked at Officer Brown briefly, and then closed his eyes. Appellant did not otherwise move or respond during the encounter with Officer Brown.

Officer Brown gave **O'Connell** warnings[3] by reading them in Appellant's presence while Appellant was unresponsive on the gurney. Predictably, Appellant did not respond and did not provide his affirmative consent. Officer Brown did not obtain a warrant for a blood draw. Rather, Officer Brown concluded that Appellant had provided "implied consent," and summoned a nurse to draw Appellant's blood. Appellant remained unconscious throughout the blood draw. The results of Appellant's blood test indicated both PCP and Xanax.

The Commonwealth charged Appellant with the above offenses. On July 16, 2014, Appellant filed a Motion to Suppress, *inter alia*, the "blood results" obtained without a warrant while he was unconscious. Following a suppression hearing at which Officers Amrik and Brown testified, the court denied Appellant's Motion to Suppress.

_____

[3] **See Commonwealth, Dep't of Transp., Bureau of Traffic Safety v. O'Connell**, 555 A.2d 873 (Pa. 1989).

On August 27, 2014, a jury convicted Appellant of the above offenses. On May 19, 2015, the trial court sentenced Appellant to a term of two to five years' incarceration.

On May 29, 2015, Appellant filed a Post-Sentence Motion. On June 4, 2015, Appellant filed a Notice of Appeal. This Court quashed Appellant's appeal as interlocutory on September 22, 2015, because the trial court had not yet decided Appellant's Post-Sentence Motion. *Commonwealth v. Luke*, No. 1738 EDA 2015 (Pa. Super. filed Sept. 22, 2015) (*per curiam*).

Appellant's Post-Sentence Motion was denied by operation of law on October 7, 2015. On October 15, 2015, Appellant filed a Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents two issues for our review:

[1.] Did the court commit error by denying Appellant's Motion to Suppress the results of Appellant's blood test when such blood was taken without a warrant or exigent circumstances and without Appellant's consent?

[2.] Did the court commit error by convicting Appellant of [DUI] where the evidence at trial was insufficient to establish that Appellant operated a vehicle under the influence of a controlled substance?

Appellant's Brief at 3 (reordered, capitalization omitted).

In reviewing the denial of a Motion to Suppress, we are limited to considering only the Commonwealth's evidence and "so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. McCoy*, 154 A.3d 813, 815-16 (Pa.

- 4 -

Super. 2017). Where the testimony and other evidence supports the suppression court's findings of fact, we are bound by them and "may reverse only if the court erred in reaching its legal conclusions based upon the facts." *Id.* at 816. It is within the exclusive province of the suppression court to "pass on the credibility of witnesses and determine the weight to be given to their testimony." *Id.*

"The scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing." *Commonwealth v. Neal*, 151 A.3d 1068, 1071 (Pa. Super. 2016) (citing *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013)). This Court will not disturb a suppression court's credibility determination absent a clear and manifest error. *Commonwealth v. Camacho*, 625 A.2d 1242, 1245 (Pa. Super. 1993).

Importantly, "[o]nce a [M]otion to [S]uppress [E]vidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-48 (Pa. 2012) (citation omitted); *see also* Pa.R.Crim.P. 581(H).

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. *In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). To effectuate these protections, the exclusionary rule bars the use of illegally

obtained evidence in state prosecutions in order to deter illegal searches and seizures. ***Commonwealth v. Arter***, 151 A.3d 149, 153-54 (Pa. 2016).

Pennsylvania's Implied Consent Law provides that any person who drives a vehicle in the Commonwealth "shall be deemed to have given consent" to a blood draw if a police officer has reasonable grounds to believe the person has been driving under the influence of a controlled substance. 75 Pa.C.S. § 1547(a). The statute provides numerous civil and evidentiary consequences of a person's refusal to consent to the testing authorized in Section 1547(a). ***See***, ***e.g.***, 75 Pa.C.S. §§ 1547(b), (b.1), (b.2), (c), (e), (f), (g.1).

Any person arrested for suspicion of DUI possesses an express "statutory right to refuse chemical testing." ***Commonwealth v. Myers***, 164 A.3d 1162, 1170 (Pa. 2017); 75 Pa.C.S. §§ 1547(b)(1). The Pennsylvania Supreme Court recently held that this right of refusal applies to unconscious arrestees. ***Myers***, 164 A.3d at 1171-72. When an arrestee's unconscious state "prevent[s] him from making a knowing and conscious choice as to whether to exercise that right," the Implied Consent Law does not authorize a blood draw while the arrestee is unconscious. ***Id.*** at 1172.[4]

---

[4] The ***Myers*** Court also held that: (1) implied consent is not an independent exception to the warrant requirement; and (2) an arrestee does not voluntarily consent to a blood draw when he or she is unconscious and deprived of the right to refuse testing. ***Myers***, 164 A.3d at 1180-81. The ***Myers*** Court further noted that "***Birchfield*** (like our own precedents) provides a general if

Appellant argues that the suppression court erred in denying his Motion to Suppress the blood sample because the Commonwealth obtained it without a warrant and without his consent. Appellant's Brief at 11. Appellant contends that, similar to the arrestee in **Myers**, police relied on the Implied Consent Law to obtain his blood sample while he was unconscious in the emergency room. **Id.** at 12-13. The Commonwealth agrees that we must vacate Appellant's Judgment of Sentence because **Myers** held "that a blood draw under similar circumstances violated the Fourth Amendment, notwithstanding Pennsylvania's implied consent statute." Commonwealth's Brief at 6.

Based on Appellant's status as an unconscious arrestee, his failure to refuse the blood test, and Officer Amrik's probable cause to suspect Appellant was driving under the influence of a controlled substance, the trial court opined, "Appellant had given his implied consent to a blood test without a warrant." Trial Court Opinion, 7/19/17, at 10. In its Opinion, the trial court relied on two Pennsylvania Supreme Court cases: **Commonwealth v. Riedel**, 651 A.2d 135 (Pa. 1994), and **Commonwealth v. Eisenhart**, 611 A.2d 681 (Pa. 1992). In **Myers**, our Supreme Court expressly: (1) disapproved of **Riedel** insofar as it suggested that implied consent was an independent exception to the warrant requirement; and (2) found untenable the statement

_____

uncontroversial endorsement of the concept of implied consent." **Myers**, 164 A.3d at 1178 (citing **Birchfield v. North Dakota**, ____ U.S. ____, 136 S.Ct. 2160, 2185, 195 L.Ed. 2d 560 (2016)).

in *Eisenhart* "that testing is allowed absent an affirmative showing of the subject's refusal to consent to the test at the time that the testing is administered." *Myers*, 164 A.3d at 1180, 1181 n.21 (quoting *Eisenhart*, 611 A.2d at 683).[5]

After careful review, we conclude that *Myers* is directly on point and squarely controls the outcome here. Officer Brown did not obtain a warrant before directing the emergency room nurse to draw a sample of Appellant's blood. Although Officer Brown read Appellant the *O'Connell* warnings, attempted to wake Appellant up by tapping him and speaking to him, saw no visible signs of injury, and believed Appellant was "play[ing] possum,"[6] Appellant remained unconscious while lying on a hospital gurney during the encounter. Although Appellant looked up briefly at Officer Brown at some point during the interaction, he did not otherwise acknowledge Officer Brown or the *O'Connell* warnings.

Notwithstanding Appellant's unconscious state, Officer Brown directed the emergency room nurse to draw Appellant's blood. That blood sample served as the basis for Appellant's particular DUI charge because it revealed

---

[5] We note that the trial court filed its Opinion on the same date that the Pennsylvania Supreme Court filed its Opinion in *Myers* and thus, would not have known about the change in the law.

[6] N.T. Suppression, 8/19/14, at 34.

the presence of controlled substances, and the Commonwealth presented the results of the blood test at Appellant's jury trial.

Because Appellant's unconscious state "prevented him from making a knowing and conscious choice as to whether to exercise" his right to refuse the blood draw, the Implied Consent Law did not authorize the blood draw. *Myers*, 164 A.3d at 1172. Accordingly, we conclude that the suppression court should have granted Appellant's Motion to Suppress.

We vacate Appellant's Judgment of Sentence, reverse the Order denying Appellant's Motion to Suppress, and remand for a new trial at which the trial court shall exclude the evidence derived from the warrantless blood draw.[7]

Judgment of Sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/18

---

[7] Given our resolution, we need not reach Appellant's second issue.

- 9 -