J-S15014-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW BRYANT LEE MOJICA | : | No. 1009 WDA 2020 |

Appeal from the Order Entered September 16, 2020
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0004573-2019

BEFORE:   LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                   **FILED: AUGUST 9, 2021**

The Commonwealth of Pennsylvania appeals from the order, entered in the Court of Common Pleas of Westmoreland County, granting Matthew Bryant Lee Mojica's motion to suppress.  After our review, we agree with the suppression court's conclusion that the Commonwealth's evidence was insufficient to establish probable cause to stop Mojica for a Vehicle Code violation.  Therefore, we affirm.

On August 29, 2019, at 9:40 p.m., New Kensington Police Officers John Walls, Perry Sciulli, and Michael McSherry, each operating his own marked police vehicle, were stopped and awaiting a green light to proceed through the four-way intersection at Seventh Street and Stevenson Boulevard.  All three officers were in the far-right lane of the three-lane roadway.  The far-

_____

[*] Retired Senior Judge assigned to the Superior Court.

right lane was marked for traffic to either make a right turn or drive straight through the intersection. Officers Walls' vehicle was stopped first in line, Officer Sciulli's was second, and Officer McSherry's third. While stopped, the officers observed Mojica travel from behind them along their right or passengers' sides, despite the fact that there was no designated traffic lane there. Mojica came to a stop alongside Officer Walls. Officer Walls testified that he assumed Mojica would make a right turn. N.T. Suppression Hearing, 5/21/20, at 9. Instead, Mojica "carelessly cut [him] off without signaling and got in front of" him as the officers proceeded through the intersection. *Id.*

Officers Walls and Sciulli communicated by radio regarding stopping Mojica, and they determined Officer Sciulli would make the stop.[1] The officers followed Mojica for a few hundred feet, and when Mojica made a left turn into a gas station, Officer Sciulli activated his emergency lights, followed Mojica into the gas station, and initiated a traffic stop. Officer Walls continued straight and made a left turn into the second entrance so as to block it as an exit for Mojica. *Id.* at 12.

_____

[1] The trial court stated that "Although [Mojica] would have violated numerous provisions of the Vehicle Code at that point in time, Officer Walls did not immediately turn on his emergency lights or attempt to pull [Mojica] over." The court noted that the "[s]tatutes apparently violated would have included 75 Pa.C.S.[A.] § 3304, § 3309, § 3334, and § 3714." Trial Court Opinion, 9/15/20, at 2.

At that point, Mojica exited his vehicle, and as Officer Walls approached, he smelled burnt marijuana emanating from the vehicle. N.T. Suppression Hearing, 5/29/20, at 28. Officer Walls looked inside the vehicle and saw what he believed was marijuana on the floorboard. *Id.* at 29. Officer Walls informed Officer Sciulli about what he suspected was marijuana, and Officer Sciulli decided to perform a *Terry*[2] frisk of Mojica for weapons. *Id.* at 30. Mojica resisted, and the officers ultimately tased and handcuffed him; a loaded firearm and bags of suspected cocaine were found on his person. Mojica was arrested, and a subsequent inventory search of his vehicle uncovered heroin, fentanyl, cocaine, oxycodone, marijuana, drug paraphernalia, currency and cell phones.

Mojica was charged with one count of possession of a firearm-prohibited,[3] one count of firearms not to be carried without a license,[4] three counts of possession with intent to deliver,[5] one count of resisting arrest,[6] four

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968) (officer may conduct limited, pat-down search for weapons when officer has reasonable suspicion that individual is armed and dangerous).

[3] 18 Pa.C.S.A. § 6105(a)(1).

[4] 18 Pa.C.S.A. § 6106(a)(1).

[5] 35 P.S. § 780-113(a)(30).

[6] 18 Pa.C.S.A. § 5014.

counts of possession of controlled substance by person not registered,[7] one count of possession of small amount of marijuana,[8] and one count of possession of drug paraphernalia.[9] On January 23, 2020, Mojica filed a motion to suppress. The court held a hearing on May 21 and 29, 2020, and on September 15, 2020, the court granted Mojica's motion to suppress. The Commonwealth filed a timely appeal on September 18, 2020.[10] Both the Commonwealth and the court complied with Pa.R.A.P. 1925.

The Commonwealth raises one issue on appeal: "Did the trial court err in finding that the Commonwealth failed to meet its burden to prove by a preponderance of the evidence that there was probable cause for the traffic stop in this case?" Commonwealth's Brief, at 4.

When the Commonwealth appeals from the grant of a suppression order, we adhere to the following standard of review:

> [We] consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the

---

[7] 35 P.S. § 780-113(a)(16).

[8] 35 P.S. § 780-113(a)(31).

[9] 35 P.S. § 780-113(a)(32).

[10] In accordance with Pa.R.A.P. 311(d), the Commonwealth certified in its notice of appeal that the suppression court's order has substantially handicapped its prosecution of the case. *See Commonwealth v. Jones*, 69 A.3d 180, 185 (Pa. 2013) (Commonwealth's appeal of suppression order is proper when Commonwealth certifies in good faith that suppression order substantially handicaps its prosecution).

record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Korn*, 139 A.3d 249, 253-54 (Pa. Super. 2016) (citation omitted). Additionally, "[i]t is within the suppression court's sole province as fact finder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa. Super. 2013) (citation omitted). "As we believe that credibility at a suppression hearing is an important determination best resolved through the court's personal observations, we will not reverse a suppression court's assessment of credibility absent clear and manifest error." *Commonwealth v. Camacho*, 625 A.2d 1242, 1245 (Pa. Super. 1993).

Probable cause is required to effectuate a traffic stop based on a suspected violation of the Vehicle Code, including turning movements and required signals. *See Commonwealth v. Brown*, 64 A.3d 1101, 1105 (Pa. Super. 2013). When determining whether the police had probable cause, this Court employs a totality of the circumstances analysis. *Id.* at 1105. Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense. *See Commonwealth v. Chase*, 960 A.2d 108 (Pa. 2008).

Upon review of the suppression hearing transcript, the totality of the circumstances indicate that the officers did not have probable cause to initiate a traffic stop. First, contrary to the affidavit of probable cause, Officer Walls

testified that Mojica did, in fact, signal before making a left turn into the gas station. *See* N.T. Suppression Hearing, 5/21/20, at 24-25. Additionally, Officer Sciulli testified as follows:

Q: And when the light turned green, what happened?

A: [Mojica] overtook Officer Walls' vehicle in the middle of the highway to go westbound onto 7th Street. He did not use a left turn signal to overtake Officer Walls' vehicle.

Q: So he went straight?

A: He went straight, sir.

Q: And he got in front of Officer Walls without signaling?

A: Yes.

Q: ***You put in your report that [] Mojica didn't make a left-hand turn [] signal into the gas station?***

A: ***Correct***.

Q: Is that a correct statement?

A: That -- I did make that. ***It was an error in the report.***

* * *

THE COURT: []***So when you indicated in your report that he made a left turn into the gas station, that was correct. When you put into the report that he did not use the left signal, that was incorrect. In fact, he did use his left turn signal when he made the turn; is that correct?***

A: Into the parking lot.

N.T. Suppression, 5/29/20, at 33-34 (emphasis added).[11]

_____

[11] We also point out that there is a further mistake within that erroneous notation in the affidavit of probable cause. The affidavit, prepared by Officer

- 6 -

Nor did the Commonwealth establish the officers had probable cause to initiate a traffic stop based on the testimony that Mojica cut off Officer Walls without signaling. Officer Sciulli acknowledged that nowhere in his affidavit of probable cause did it mention Mojica overtook three police vehicles, was carelessly driving, or failed to signal. N.T. Suppression Hearing, 5/29/20, at 45.

> On August 30, 2020, the day after the stop, Officer Sciulli prepared an Affidavit of Probable Cause. At some point thereafter, he prepared a Police Report. Narratives regarding the stop were included in both documents. **_Officer Sciulli did not include in either document any reference to [Mojica's] failure to drive in the proper lane of traffic, his improper passing, or his failure to signal when passing Officer Walls. Instead, he indicated in both documents that he decided to make the traffic stop when Mojica failed to signal before pulling into the gas station. However, much of the incident was captured on surveillance video from the gas station, and the surveillance video contained footage of Mojica having activated his left turn signal when pulling into the lot_**. Both Officers Walls and Sciulli stated that [Officer Sciulli's] references to the failure to signal in the subsequently drafted reports constituted error on [Officer Sciulli's] part.

Trial Court Opinion, supra at 2-3 (emphasis added). The officers' failure to initiate a traffic stop when they purportedly observed clear Vehicle Code

---

Sciulli, states the traffic stop was predicated upon "fail[ure] to use a **_right_** turn signal, turning from 7th Street into the parking of the [] gas station." Affidavit of Probable Cause, 8/30/19, at 1 (emphasis added). Officer Sciulli acknowledged this additional error as well. **_See_** N.T. Suppression Hearing, **_supra_** at 45 ("Q: **_The only thing that's listed as far as a reason for pulling his vehicle over would be failing to signal into the [gas station]; is that right?_** A: **_Yes, sir_**. Q: **_And for clarification's sake, it would have been a left-hand turn signal not a right-hand turn signal; is that accurate?_** A: **_Yes, sir_**.") (emphasis added).

violations as well as their failure to include that narrative in the affidavit of probable cause, is inexplicable and fatal to the prosecution.

Simply put, the suppression court found the officers' testimony not credible. *See* Pa.R.A.P. 1925(a) Opinion, 10/16/20, at 1 (stating there were "various unanswered questions" and "a lack of credibility to the testimony of Officers John Wall and Perry Sciulli."). It is our duty as an appellate court to defer to the suppression court's credibility determination where those findings, as here, are supported by the record. ***Clemens***, ***supra***; ***Camacho***, ***supra***. Accordingly, discerning no manifest error in the suppression court's credibility determinations, we are constrained to affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  08/09/2021