OPINION BY DUBOW, J.:
Appellant, Dolphus Otis Fudge, appeals from the Judgment of Sentence of 54 to 108 months of incarceration, imposed on April 10, 2018, following a trial resulting in his conviction for Firearms Not to be Carried Without a License, Possession of a Controlled Substance (methamphetamine), Possession of Drug Paraphernalia, Driving Under the Influence-Controlled Substance (DUI), and several summary violations of the Motor Vehicle Code.[1] We vacate the Judgment of Sentence as to the charge of DUI and remand. We affirm in all other respects.
We derive the following statement of facts from the trial court's Opinion, which is supported by the certified record. See *325 Trial Ct. Pa.R.A.P. 1925(a) Op., dated 8/13/18, at 2-4.
In the evening of June 27, 2017, Pennsylvania State Trooper Dabrowski, observed a commercial tractor trailer driving unlawfully in the left lane of Interstate 81 in Cumberland County.[2] Following this commercial vehicle, Trooper Dabrowski followed the vehicle and clocked it traveling at seventy-five miles per hour in a posted sixty-five miles-per-hour zone. He further observed the vehicle swerve in front of and nearly strike a pickup truck driving in the middle lane. Trooper Dabrowski activated his emergency lights and initiated a traffic stop of the tractor trailer.
As he approached the vehicle, which was occupied by Appellant and a female passenger, the trooper smelled burnt marijuana emanating from the cab. At Trooper Dabrowski's request, he and Appellant conversed outside the cab.
Appellant suggested that his passenger had been smoking marijuana. However, Trooper Dabrowski observed that Appellant's pupils were dilated and did not constrict when light hit them. In addition, he observed that Appellant continuously ground his teeth. Based on these observations, Trooper Dabrowski believed that Appellant was under the influence of some kind of stimulant.
Appellant agreed to submit to field sobriety testing. As a result of this testing, Trooper Dabrowski noted that Appellant had a "sped-up body clock and eyelid tremors." Id. at 3.[3] Trooper Dabrowski concluded that Appellant was operating the tractor trailer while under the influence of marijuana and/or some other stimulant and placed Appellant under arrest.
Trooper Dabrowski requested backup, including a K-9 unit, to assist in his warrantless search of the tractor trailer. Trooper Dabrowski and a canine handler subsequently searched the cab and found a loaded 9mm handgun, a separate magazine for the firearm, marijuana, methamphetamine, and various items of drug paraphernalia. Thus, in addition to a charge of DUI, Appellant incurred charges related to the drugs and firearm.
Thereafter, Appellant filed a Motion to Suppress seeking, inter alia , the suppression of physical evidence seized from the cab of the tractor trailer. See Omnibus Motion, 9/22/17, at 2-3 (unpaginated). According to Appellant, police lacked probable cause to conduct a warrantless search of the cab. Id. Following a hearing, the lower court denied Appellant's Motion to Suppress. Suppression Ct. Order, 1/25/18.[4]
In March 2018, a jury trial commenced. At the close of testimony, the court instructed the jury on all offenses, including the DUI.[5] Following deliberations, the jury convicted Appellant of Firearms Not to be Carried Without a License, Possession of a Controlled Substance (methamphetamine), and Possession of Drug Paraphernalia (glass pipes associated with smoking methamphetamine). N.T. Trial, 3/20/18, at 155-56.
*326 However, the jury informed the court that it was unable to reach a unanimous verdict on the DUI charge. Id. at 156-57. The trial court instructed the jury to leave its verdict sheet blank for that charge. Over Appellant's objection, the court then sua sponte entered a verdict of guilty for DUI and the summary traffic violations. Id. at 154-55.
Following a presentence investigation, the court imposed a sentence as indicated above, in addition to various costs and fines. Appellant did not file a post-sentence motion but timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement. The trial court issued a responsive Opinion.
Appellant raises the following issues on appeal:
[1.] [Whether] the [suppression] [c]ourt erred in denying [Appellant's] [M]otion to suppress[ ] physical evidence, where the only evidence to support the constitutionality of the search was the testimony of an officer who made numerous material false statements of fact during the suppression hearing[;]
[2.] [Whether] the [t]rial [c]ourt committed an abuse of discretion in allowing Trooper Dabrowski to provide expert opinion about the circumstances under which fingerprints can and cannot be found on items of physical evidence[;]
[3.] [Whether] the [t]rial [c]ourt committed an abuse of discretion in entering a guilty verdict on the charge of driving under the influence after that count had been charged to the [j]ury and the [j]ury indicated that it had hung on that count [; and]
[4.] [Whether] the [t]rial [c]ourt committed an abuse of discretion in allowing Trooper Dabrowski to provide expert opinion about whether [Appellant] was under the influence of a controlled substance so as to render him incapable of safe driving.
Appellant's Br. at 6 (issues reordered for ease of analysis).
Suppression of Physical Evidence
In his first issue, Appellant asserts the suppression court erred in denying his Motion to Suppress the contraband seized from the cab of his tractor trailer. Id. at 13. His argument focuses solely on the credibility of Trooper Dabrowski's testimony. Id. at 15-19. According to Appellant, the court abused its discretion when it credited this testimony despite several materially false statements contained therein. Id. at 20.
In reviewing the denial of a motion to suppress, we are limited to considering only the Commonwealth's evidence and "so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." Commonwealth v. McCoy , 154 A.3d 813, 815-16 (Pa. Super. 2017). Further, "[t]he scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing." Commonwealth v. Neal , 151 A.3d 1068, 1071 (Pa. Super. 2016) (citing In re L.J. , 622 Pa. 126, 79 A.3d 1073, 1087 (2013) ).
Where the testimony and other evidence supports the suppression court's findings of fact, we are bound by them and "may reverse only if the court erred in reaching its legal conclusions based upon the facts." McCoy , 154 A.3d at 816. It is within the exclusive province of the suppression court to "pass on the credibility of witnesses and determine the weight to be given to their testimony." Id. This Court will not disturb a suppression court's credibility determination absent a clear and manifest error.
*327 Commonwealth v. Cama cho , 425 Pa.Super. 567, 625 A.2d 1242, 1245 (1993).
Here, Appellant asserts that Trooper Dabrowski did not testify truthfully at the suppression hearing. For example, Appellant points to direct testimony by the trooper, indicating that no search of the vehicle occurred before the arrival of the K-9 unit and that he did not search the vehicle until the canine alerted him to the presence of drugs. Appellant's Br. at 15-16 (quoting N.T. Suppression at 8-11). However, Trooper Dabrowski conceded on cross-examination that he and the K-9 handler first conducted a protective sweep of the cab to ensure the canine's safety. Id. at 16-17 (quoting N.T. Suppression at 21-22). As a result of this initial sweep, the police discovered the contraband. Further, Appellant introduced video evidence confirming that Trooper Dabrowski searched the cab and seized contraband without the assistance of the canine. Id.
Because Trooper Dabrowski gave demonstrably false testimony, Appellant suggests the suppression court should have rejected his testimony in its entirety. We disagree. As noted by the suppression court, the discrepancies in Trooper Dabrowski's testimony were not material, "inasmuch as the validity of the search depended upon the existence of probable cause [that Appellant had committed a crime] and not on the instrumentality by which it was conducted." Suppression Ct. Op. at 9. Thus, we will not disturb the court's credibility determination. Camacho , 625 A.2d at 1245 ; see also Commonwealth v. Ieradi , 216 Pa. 87, 64 A. 889, 889 (1906) (noting that the principle, "falsus in uno , falsus in omnibus ," i.e. , "false in one, false in all," permits but does not require a fact finder to reject the testimony of a witness who "willfully and corruptly swears falsely to any material fact in a case").
With respect to a warrantless search of a vehicle, Pennsylvania's law is "coextensive" with federal law under the Fourth Amendment of the U.S. Constitution. Commonwealth v. Gary , 625 Pa. 183, 91 A.3d 102, 120 (2014) (OAJC). In Gary , a plurality of our Supreme Court held that "[t]he prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required." Id. at 138. Thus, the material issue before the suppression court was whether Trooper Dabrowski had probable cause to search Appellant's vehicle.
Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to believe that a defendant has or is committing an offense. Commonwealth v. Runyan , 160 A.3d 831, 837 (Pa. Super. 2017) (citation omitted). "The evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer." Id. The well-established standard for evaluating whether probable cause exists is consideration of the "totality of the circumstances." Id.
The undisputed evidence adduced at the suppression hearing established probable cause in this case. Trooper Dabrowski observed erratic and dangerous driving by Appellant. In the course of performing a lawful traffic stop, Trooper Dabrowski noted the smell of burnt marijuana emanating from the cab of Appellant's tractor trailer. These facts clearly justified the field sobriety tests conducted by Trooper Dabrowski, which revealed further indicia that Appellant was driving while intoxicated. Based on the totality of this evidence, we discern no error in the court's conclusion that Trooper Dabrowski *328 had probable cause to search the vehicle or its decision to deny Appellant's Motion to Suppress the contraband seized. Runyan , 160 A.3d at 837 ; McCoy , 154 A.3d at 816.[6]
Lay Opinion Testimony
In his second issue, Appellant challenges an evidentiary ruling by the trial court. We review such rulings for an abuse of discretion. Commonwealth v. Gause , 164 A.3d 532, 537 (Pa. Super. 2017). "In the event of an erroneous admission of evidence, a verdict can still be sustained if the error was harmless." Commonwealth v. Yocolano , 169 A.3d 47, 53 (Pa. Super. 2017) (noting that an error is harmless, e.g. , where it "did not prejudice the defendant or the prejudice was de minimis ") (citation omitted).
Appellant asserts the trial court abused its discretion when it permitted Trooper Dabrowski to opine on the "consistency and formation of fingerprints[.]" Appellant's Br. at 24. According to Appellant, the technical and scientific nature of this subject matter requires specialized knowledge beyond the training or experience of Trooper Dabrowski. Id. In permitting this testimony, Appellant concludes, the court inappropriately bolstered the trooper's credibility in the eyes of the jury.[7]
Opinion testimony by a lay witness is admissible when it is:
(a) Rationally based on the witness's perception;
(b) Helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
(c) Not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.
Pa.R.E. 701. "Generally, lay witnesses may express personal opinions related to their observations on a range of subject areas based on their personal experiences that are helpful to the factfinder." Commonwealth v. Berry , 172 A.3d 1, 3-4 (Pa. Super. 2017) (citation omitted).
During re-direct examination, Trooper Dabrowski testified as follows:
A So, in my experience, a small item like this, a plastic bag, a fingerprint is not going to-first of all, it's got-it's not flat is what I'm trying to say. It's got ridges and everything else, so that's going to screw up any type of fingerprints even if you could get it off of there.
Q It has a texture to it?
A A texture, yeah. If anybody touches this, it's right overtop of the other one, and you're not going to get anything off of that material. The same as the gun. I mean, the gun has ridges down here on the handle, so any type of fingerprint would maybe overlap. This material here, in my experience, is not-while it's smooth, it's not porous that it would hold any salts or anything from your hand. That's what you get fingerprints from. So, it's not unusual that you wouldn't get prints. The same *329 with the pipes. I mean, the pipes, it depends how you hold it. If you're barely touching it to smoke it, because it does get hot, we don't find-I wouldn't send that away for prints. You're not going to find one.
N.T. Trial at 75-76.
As demonstrated by Appellant on re-cross examination, this testimony goes beyond the scope of Trooper Dabrowski's personal training and experience:
Q Trooper, are you trained in forensic science?
A No, I'm not.
Q Do you have an advanced degree of any sort in forensic science?
A I don't.
Q Are you, yourself, a fingerprint examiner?
A I am not.
Id. at 79.
If Trooper Dabrowski had limited his testimony to his experience with investigative procedures or departmental policy regarding the submission of evidence for forensic analysis, or if he had merely described how often, in his experience, such evidence was relied upon in cases that he investigated, it would have been permissible lay witness testimony. However, he did not so limit his testimony. Rather, Trooper Dabrowski provided scientific reasons a fingerprint is deposited upon a foreign surface and opined whether a forensic expert could successfully extract evidence based on the nature of that surface. As he admitted on re-cross examination, this testimony was beyond his training or experience. Cf. Berry , 172 A.3d at 5 (holding that police officers, based on their experience, testified permissibly that droplets observed at crime scene appeared to be blood). Thus, the trial court abused its discretion in permitting this testimony. Gause , 164 A.3d at 537. However, we agree with the Commonwealth's contention that the admission of this testimony was harmless. See Commonwealth's Br. at 13-14.
The Commonwealth proceeded on a theory of constructive possession in prosecuting Appellant for the firearm, narcotics, and drug paraphernalia seized from the cab of his tractor trailer. See N.T. Trial at 17 (Commonwealth's opening statement: "[T]his case is really about constructive possession"). In contrast to actual possession, "constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." Commonwealth v. Hopkins , 67 A.3d 817, 820 (Pa. Super. 2013) (citation omitted). It is an inference, based upon the totality of the circumstances, that possession is more likely than not. Id. Essentially, constructive possession is "conscious dominion," i.e. , "the power to control the contraband and the intent to exercise that control." Id.
The Commonwealth established that Trooper Dabrowski seized the contraband from within the cab of Appellant's tractor trailer, well within Appellant's conscious dominion and control. Whether Appellant's fingerprints were present on the contraband is solely relevant to whether Appellant was in actual, physical possession of the contraband. Because the Commonwealth proceeded on a theory of constructive possession, the introduction of the fingerprint evidence was harmless error. Yocolano , 169 A.3d at 53.[8]
*330 DUI Verdict
In his third issue, Appellant asserts that the trial court abused its discretion when it recorded a guilty verdict on the DUI charge after the jury informed the court that it could not reach a unanimous decision. See Appellant's Br. at 30-32 (citing Pa.R.Crim.P. 648 ; N.T. Trial at 154-155).
In particular, the record documents the following sequence of events: The jury informed the trial court that it could not reach a verdict on the DUI charge. N.T. Trial at 154-155. The trial court did not instruct the jurors to continue its deliberations but, rather, told the jurors to leave the DUI verdict sheet blank and return the other verdict sheets. Id. The court dismissed the jurors and, without declaring a mistrial or hearing any testimony or argument from the lawyers, announced that Appellant was guilty of DUI and entered an Order memorializing its verdict. Id.
According to Appellant, the court essentially entered a "directed verdict of guilt," which is not permissible in our criminal law. Id. at 31 (citing Commonwealth v. Gearhart , 253 Pa.Super. 238, 384 A.2d 1321, 1323 (1978) ). In so doing, Appellant suggests, the court "violated the province of the jury," and he is, therefore, entitled to a new trial. Id. at 32.[9]
In response to this argument, the trial court asserts that it properly "exercised its discretion" to consider the DUI charge as if it had been presented at a bench trial. Trial Ct. Pa.R.A.P. 1925(a) Op. at 8. The court notes that, because the Commonwealth charged Appellant with a first-offense DUI, which carries a maximum penalty of six months' incarceration, Appellant had no constitutional right to a jury trial on the charge. Id. at 9 n.16 (citing, inter alia , Commonwealth v. Kerry , 906 A.2d 1237, 1239-40 (Pa. Super. 2006) ). Suggesting that its initial decision to submit the charge to the jury was erroneous, and referencing the Commonwealth's right to pursue another trial on the DUI charge, the court concludes that its decision was appropriate, within its discretionary authority, and in the interest of judicial economy. Id. at 8-9.[10]
The trial court correctly notes that Appellant had no constitutional right to a jury trial on the DUI charge. Appellant had no prior DUI offenses and, therefore, faced a maximum term of imprisonment of no more than six months. See 75 Pa.C.S. § 3803(b)(2). This constitutes a petty crime, "which is not subject to the Sixth Amendment jury trial provision." Kerry , 906 A.2d at 1239 (quoting Blanton v. North Las Vegas , 489 U.S. 538, 541, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989) ). Further, *331 the potential for an aggregate sentence that exceeds six months, such as where a defendant faces multiple counts of petty crimes, does not "transform the petty offense into a serious one[.]" Id. at 1240 (citation omitted).
Nevertheless, the trial court cites no authority for its professed "discretion" to wrest a charge from the jury once the court has formally submitted that charge to the jury for deliberation and the jury has informed the court that it is unable to reach a unanimous decision on a particular charge. Discretion requires dispassionate reason within the framework of the law. Commonwealth v. Widmer , 560 Pa. 308, 744 A.2d 745, 753 (2000). "Discretion is abused ... where the law is not applied[.]" Id. (citation omitted).
Generally, a criminal verdict is a binary decision-the fact finder will determine, based upon the evidence presented and the applicable law, whether a defendant is guilty or not guilty of a particular charge. However, a jury's verdict must be unanimous. Commonwealth v. Jackson , 457 Pa. 237, 324 A.2d 350, 353 (1974) (citing federal and state constitutions); Pa.R.Crim.P. 648(B). Thus, when the Commonwealth's case is submitted to a jury, there arises an inherent possibility that a unanimous decision will prove elusive. See, e.g. , Commonwealth v. McDaniels , 886 A.2d 682, 688 (Pa. Super. 2005) (rejecting the trial court's efforts to mold a verdict, noting that "a hung jury was a plausible enough result").
Many variables factor into the trial of criminal cases. For this reason, our Supreme Court has established no bright line rule defining the length of time that a jury should deliberate. Commonwealth v. Chester , 526 Pa. 578, 587 A.2d 1367, 1380 (1991). "Each case differs in the complexity of the issues presented, the seriousness of the charges, the number of charges to be considered, the amount of testimony to be digested and reviewed, thus requiring the reasonableness of the time for deliberations to be made on a case-by-case basis." Id. (citation omitted). A trial judge retains discretion to consider whether additional deliberations will enable a jury to arrive at a unanimous verdict or to conclude the jury is truly deadlocked. Id.
Once the presiding judge concludes the jury is deadlocked, the proper course of action is to declare a mistrial. See, e.g. , Commonwealth v. Buffington , 574 Pa. 29, 828 A.2d 1024, 1027 (2003) ; Commonwealth v. Smith , 324 Pa.Super. 156, 471 A.2d 510, 512 (1984) ("The genuine inability of a jury to agree on a verdict constitutes a manifest necessity to declare a mistrial[.]"). There is no legal authority, however, for the trial court sua sponte and without a new trial to convict a defendant of the charge for which the jury was deadlocked.
Generally, when a mistrial occurs, "a defendant may be retried, without violating double jeopardy principles." Buffington , 828 A.2d at 1030 ; Commonwealth v. Jones , 166 A.3d 349, 352 (Pa. Super. 2017). Pa.R.Crim.P. 648(D) codifies this procedure:
If there are two or more counts in the information or indictment, the jury may report a verdict or verdicts with respect to those counts upon which it has agreed, and the judge shall receive and record all such verdicts. If the jury cannot agree with respect to all the counts in the information or indictment if those counts to which it has agreed operate as an acquittal of lesser or greater included offenses to which they cannot agree, these latter counts shall be dismissed. When the counts in the information or indictment upon which the jury cannot agree are not included offenses of the *332 counts in the information or indictment upon which it has agreed, the defendant or defendants may be retried on those counts in the information or indictment.
Pa.R.Crim.P. 648(D). Notably, this language is permissive, suggesting a defendant "may be retried." P.R.Crim.P. 648(D) (emphasis added). The text of the Rule does not require a retrial, and it is within the discretion of the Commonwealth to decide whether to re-try a defendant.
In this case, the trial court has acknowledged the Commonwealth's right to proceed with a retrial; however, the court's chosen course of action rendered this right illusory. This is a fundamental error. By depriving the Commonwealth of an opportunity to exercise this right, the trial court intruded upon its prosecutorial discretion, which "is rooted in the separation of governmental powers doctrine." Commonwealth v. Slick , 432 Pa.Super. 563, 639 A.2d 482, 486 (1994) (citation omitted) (further noting that "[a] judge in our system does not have the authority to tell prosecutors which crimes to prosecute or when to prosecute them"); see also Commonwealth v. Eisemann , 276 Pa.Super. 543, 419 A.2d 591, 592 (1980) ("This discretionary power of the District Attorney in determining whether prosecution shall be commenced or maintained may well depend on matters of policy wholly separate and apart from the existence or nonexistence of probable cause.").
Moreover, because the trial court convicted Appellant of the DUI charge once the jury announced that it was deadlocked, the court's decision was in essence an attempt to wrest the charge from the jury. Such an action is akin to "usurpation" of normal process and prohibited. See, e.g. , Commonwealth v. Johnson , 359 Pa. 287, 59 A.2d 128 (1948) (reversing judgment of sentence imposed for manslaughter, where trial court reassembled jury to amend previously recorded but incomplete verdict); McDaniels , supra (despite recognizing trial court's "laudable" intentions, vacating not guilty verdict where trial court had previously recorded jury as deadlocked but where court later reconvened jury when it discovered that jury had reached unanimous not guilty verdict on certain charges); see also, e.g. , Commonwealth v. Moore , 398 Pa. 198, 157 A.2d 65, 70 (1959) (stating that judicial coercion is "a monstrous doctrine ... altogether repugnant to a sense of humanity and justice"); Miller v. Miller , 187 Pa. 572, 41 A. 277, 282 (1898) (reversing verdict where trial judge mandated jury's decision, threatening "penalties of both moral and physical suffering for disobedience"). In each of these cases, as here, the presiding judge usurped the normal process-i.e. , charging a jury, permitting the jury to deliberate, and then accepting and recording the product of its deliberations.
Our review of this precedent suggests the court must acquiesce to the jury's collective judgment, and where the jury is unable to reach a unanimous verdict, despite reasonable deliberation, the proper course of action is for the presiding judge to declare a mistrial. There is no precedent for the trial court to enter a verdict itself.
Thus, in this case, upon learning of the jury's inability to reach a unanimous verdict on the DUI charge, the presiding judge was empowered to choose from two options. In the proper exercise of its discretion, the judge could have encouraged the jury to continue its deliberations, perhaps following additional or clarifying instructions. Chester , supra . In the alternative, the judge could have determined that the jury was hopelessly deadlocked, recorded their indecision, and declared a mistrial. Buffington , supra . Provided there arose no double jeopardy issue, the Commonwealth could then decide whether *333 to proceed with a retrial on this charge. Buffington ; Smith .
Clearly, the trial court failed to follow these alternatives, and such failure constitutes an abuse of the court's discretion. Widmer , 744 A.2d at 753. Accordingly, we vacate Appellant's Judgment of Sentence as to the DUI charge. Appellant's other convictions and the sentences imposed thereon are affirmed. We remand for further proceedings consistent with our analysis.[11]
Judgment of Sentence affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

18 Pa.C.S. § 6106(a)(1) ; 35 P.S. §§ 780-113(a)(16), (32) ; 75 Pa.C.S. §§ 3802(d)(2), 3309(1), 3362(a)(3), 3714(a), respectively.

Trooper Dabrowski had twenty-four years of experience and substantial training and experience specifically related to DUI stops. See N.T. Suppression, 10/20/17, at 4, 7.

Trooper Dabrowski testified that Appellant's eyelids were trembling and, regarding his internal body clock, that Appellant estimated the passage of thirty seconds in only eleven seconds of real time. See N.T. Trial, 5/15/18, at 34.

The court granted Appellant's separate Motion to Suppress a statement obtained from Appellant during police transportation of him to a preliminary hearing. Suppression Ct. Order, 1/25/18, Suppression Ct. Op., filed 1/25/18, at 4, 10.

The trial court did not instruct the jury on the summary traffic violations.

Similarly, we reject Appellant's suggestion that video evidence contradicting Trooper Dabrowski's testimony and demonstrating that he conducted a standard commercial vehicle inspection of Appellant's trailer load prior to administering field sobriety tests rendered his testimony not credible. As noted by the suppression court, "sufficient grounds existed to pursue both ... and their sequential order does not seem particularly significant." Suppression Ct. Op. at 10.

We note that the challenged testimony of Trooper Dabrowski is relevant to Appellant's possessory offenses. In light of our disposition, we decline to address whether it has further relevance.

To be clear, we discern no prejudice to Appellant, and in fact, during closing argument, Appellant's counsel relied upon Trooper Dabrowski's testimony about the lack of fingerprint evidence to challenge the strength of the Commonwealth's case. See N.T. Trial at 123.

Appellant's argument proceeds from the premise that once a court charges the jury to deliberate, it is bound to accept the jury's collective judgment. This includes the possibility that the jury will be unable to reach a unanimous verdict. From this premise, Appellant concludes that the court lacked authority to enter a verdict on Appellant's DUI charge. For the reasons we discuss, infra , we conclude that Appellant's argument has merit. Nevertheless, we note that Appellant's reliance on Gearhart is not persuasive. In that case, we addressed constitutional limitations on evidentiary presumptions in the criminal context. Gearhart , 384 A.2d at 1323-24. Insofar as mandatory presumptions undermine the presumption of innocence, we equated a mandatory evidentiary presumption with a directed verdict of guilt and concluded that this was impermissible. Id. at 1323. Here, the trial court did not instruct members of the jury that they were bound to infer facts that comprise elements of the DUI charge against Appellant. Cf. id. Thus, we deem Gearhart inapposite.

The Commonwealth has offered no substantive argument on this issue. See Commonwealth's Br. at 19 (deferring to the trial court's analysis).

In light of our disposition, we decline to address the evidentiary question presented in Appellant's fourth issue.