J-S03019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JONATHAN WINSTON JAMES | : | |
| | : | |
| Appellant | : | No. 686 WDA 2019 |

Appeal from the Judgment of Sentence Entered March 11, 2019
In the Court of Common Pleas of Erie County Criminal Division
at No(s): CP-25-CR-0001142-2018

BEFORE:   McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:                **FILED FEBRUARY 11, 2020**

Jonathan Winston James (Appellant) appeals from the judgment of sentence entered in the Erie County Court of Common Pleas, following his jury convictions of drug possession offenses.  He avers the search warrant in this matter was defective and thus the trial court erred in denying his suppression motion.  We affirm.

On October 4, 2017, Erie Police Detective Jason Triana applied for a warrant to search Appellant's residence.  The trial court summarized the averments in the supporting affidavit of probable cause as follows:

> In September of 2017 City of Erie Police received calls from neighbors that an individual [residing] at 917 West 36th Street . . . walks to the Liberty Plaza parking lot to sell drugs.  Police obtained the name of Johnathan[, Appellant's first name,] and a description of the individual.  He was reported to be driving a dark colored Chevy SUV, with a specific license number.

---

[*] Retired Senior Judge assigned to the Superior Court.

[Detective Triana] set up surveillance around the house. On September 13, 2017[, he] conducted a trash pull in which garbage was collected from the front of the residence. [Detective Triana] found two Western Union receipts and a Spectrum bill bearing [Appellant's] name, as well as 9 sandwich baggies[, one] with the corners ripped off, several of which tested positive for cocaine. Police researched [Appellant's name] and found a criminal history, including [1995, 1999, and 2009 convictions and sentences for drug offenses, as well as a 2006 drug charge in New York.]

\* \* \*

. . . On October 4, 2017, [Detective Triana and another detective] were watching the home when they saw a vehicle enter the driveway and a person approach the rear of the home and leave a few minutes later. [Detective Triana referred to this person as P.T. P.T.] drove to the Liberty Plaza parking lot. [The detectives] followed. When the[y] approached [P.T.'s] car they saw [P.T.] holding a syringe, burnt spoon, and folded piece of paper. [P.T.] admitted he[ ] was a heroin user and was getting ready to shoot up heroin. He[ ] stated that he got the heroin from a person named "Black" and that he[ ] paid $80.00 for it. [P.T.] was brought . . . to the police station [and stated he purchased drugs from "Black" almost daily] over a two year period.

Trial Ct. Op., 11/7/18, at 1-2. Powder in P.T.'s folded paper field-tested positive for heroin. Application for Search Warrant & Authorization, 10/4/17, Affidavit of Probable Cause, 10/4/17, at 2.

We note the affidavit of probable cause further stated the following. When shown a photograph of Appellant, P.T. identified him as "Black." P.T. showed the detectives his text messages with "Black," and Detective Triana observed that "the name under the contact stated" Appellant's name. Affidavit of Probable Cause at 2. The time stamps for P.T.'s texted request for drugs and Appellant's response "coincide[d] with the times that [the detectives]

- 2 -

observed P.T. arriving at 917 W. 36th St." ***Id.***

The trial court further summarized that the affidavit of probable cause

stated:

> P.T. agreed to participate in a controlled buy. Police searched P.T. and his vehicle before the controlled buy. Police set up surveillance around [Appellant's] residence and observed P.T. enter 917 West 36th Street. He was carrying marked buy money. He exited a few minutes later and reported directly to police with a substance that later tested positive for heroin.

Trial Ct. Op. at 2. Detective Triana averred, "P.T. was under constant

surveillance the entire time the controlled buys [sic] were made. There is no

other way the Heroin came from anywhere else besides the person of

[Appellant] or the residence of 917 W. 36th St." Affidavit of Probable Cause

at 3. The detective thus asserted his belief that Appellant was using his

residence to store and sell drugs.

Detective Triana presented the application for a search warrant to "the

duty district justice at the time," District Justice Bizzarro,[1] *via* facsimile.

Detective Triana then swore to the affidavit of probable cause *via* telephone.

Trial Ct. Op. at 2.

> The search warrant was issued on October 4, 2017, at 1:45 p.m. The warrant [did] not specify the latest date by which the warrant could be served, although the form indicate[d:] "The issuing authority should specify a date no later than two (2) days after issuance. Pa.R.Crim.P. 205(4)." The warrant was served on October [4,] 2017 at 3:30 p.m., several hours after it was issued [and on the same day that Detective Triana initially observed P.T.

---

[1] ***See*** N.T. Suppression H'rg, 10/30/18, at 12-13. District Justice Bizzarro's first name is not apparent from the record.

in the Liberty Plaza parking lot and P.T. conducted the controlled buy.]

*Id.* at 2.

Police recovered marijuana from Appellant's person and observed, in plain view, "a rolled blunt marijuana cigar" in his vehicle. Trial Ct. Op. at 2-3. Inside the residence, police found a bathrobe, which contained $650 and two baggies containing a total of 12.5 grams of heroin. Police also found a digital scale and drug packaging material.

At this juncture, we note that the search warrant stated, "This Warrant shall be returned to judicial officer Hon. Judge DiPaolo."[2] Application for Search Warrant & Authorization, 10/4/17, at 1. Furthermore, "several months after the warrant was issued[,] there was an acrimonious change of administration between District Justice DiPaolo and District Justice [Timothy] Beveridge." Trial Ct. Op. at 6.

Appellant was charged with drug offenses.[3] He filed a motion to suppress all the evidence seized, as well as the statements he made to police. In support, Appellant argued that the search warrant was defective because:

---

[2] District Justice DiPaolo's first name is not apparent from the record.

[3] Consistent with a tentative plea agreement, the Commonwealth initially charged Appellant with one count: possession with intent to deliver a controlled substance (PWID), 35 P.S. § 780-113(a)(30). Subsequently, when Appellant indicated he would no longer plead guilty, the Commonwealth amended the information to add charges of possession of a controlled substance, possession of marijuana, and possession of drug paraphernalia, 35 P.S. § 780-113(a)(16), (31), (32).

(1) the search warrant did not restrict the time for execution; (2) Detective Triana improperly swore to the affidavit of probable cause by telephone; (3) Detective Triana failed to return the search warrant to the issuing authority, in violation of Pa.R.Crim.P. 209(A); (4) the issuing authority failed to file the executed warrant with the clerk of courts, in violation of Pa.R.Crim.P. 210; and (5) the affidavit of probable cause was factually deficient because it relied "upon uncorroborated information from a confidential informant." Appellant's Omnibus Pre-Trial Motion for Relief, 9/28/18, at 2-4 (unpaginated).

The trial court conducted a suppression hearing on October 30, 2018. Pertinently, Detective Triana testified that following the search, he placed the search warrant in a "warrant officer's box" at the police station for delivery to the district justice's office. N.T. Suppression H'rg at 15. The court denied Appellant's suppression motion on November 7, 2018.

This matter proceeded to a jury trial on January 8, 2019. The jury found Appellant guilty of possession of a controlled substance, possession of marijuana, and possession of drug paraphernalia.[4] On March 11, 2019, the trial court imposed an imprisonment term of 11 months and 15 days to 23 months, and a consecutive probationary term of one year. Appellant filed a post-trial motion, which was denied on April 9, 2019. Appellant took this timely appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

---

[4] The jury found Appellant not guilty of PWID.

Appellant presents one issue for our review:

Did the Court below err and commit an abuse of discretion in its failure to grant Appellant's Pretrial Motion to Suppress?

Appellant's Brief at 1. Appellant avers that the trial court erred in finding the search warrant was valid and, accordingly, denying his motion to suppress. In support, Appellant advances several arguments, which we address *seriatim* below.

We first note the relevant standard of review:

In reviewing the denial of a motion to suppress, we are limited to considering only the Commonwealth's evidence and "so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." Further, "[t]he scope of review from a suppression ruling is limited to the evidentiary record created at the suppression hearing."

. . . It is within the exclusive province of the suppression court to "pass on the credibility of witnesses and determine the weight to be given to their testimony." This Court will not disturb a suppression court's credibility determination absent a clear and manifest error.

*Commonwealth v. Fudge*, 213 A.3d 321, 326 (Pa. Super. 2019) (citations omitted).

First, Appellant maintains that District Justice Bizzaro improperly allowed Detective Triana to swear to the affidavit by facsimile and telephone.[5] Appellant asserts that Pa.R.Crim. 203 requires an affidavit to be sworn to an

___

[5] Although this issue was not raised in Appellant's pre-trial motion, we note he argued it at the suppression hearing, and thus preserved it for our review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); N.T. Suppression H'rg at 28.

- 6 -

issuing authority in person or by "advanced communication technology," which Appellant maintains is defined as "any device which at a minimum, allows for simultaneous audio-visual communication." Appellant's Brief at 5 (emphasis omitted), *citing* Pa.R.Crim.P. 203(B), (C). We disagree.

Pennsylvania Rule of Criminal Procedure 203 provides in pertinent part:

> (B) No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority in person or using advanced communication technology. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.
>
> (C) Immediately prior to submitting a search warrant application and affidavit to an issuing authority using advanced communication technology, the affiant must personally communicate with the issuing authority in person, **by telephone**, **or by any device which allows for simultaneous audio-visual communication**. During the communication, the issuing authority shall verify the identity of the affiant, and orally administer an oath to the affiant. In any telephonic communication, if the issuing authority has a concern regarding the identity of the affiant, the issuing authority **may** require the affiant to communicate by a device allowing for two-way simultaneous audio-visual communication or may require the affiant to appear in person.

Pa.R.Crim.P. 203(B), (C) (emphases added). Rule 103 defines "advanced communication technology" as

> any communication equipment that is used as a link between parties in physically separate locations, and **includes, but is not limited to**: systems providing for two-way simultaneous communication of image and sound; closed-circuit television; **telephone and facsimile equipment**; and electronic mail.

Pa.R.Crim.P. 103 (emphases added). As Appellant points out, when interpreting our Rules of Court, "[w]ords and phrases shall be construed

according to rules of grammar and according to their common and approved usage." Appellant's Brief at 7, *citing* 1 Pa.C.S. § 1903(a).

Contrary to Appellant's argument, the Rules of Criminal Procedure's definition of "advanced communication technology" is not limited to devices that allow simultaneous audio-visual communication. **See** Appellant's Brief at 5. Instead, the definition at Rule 103 contemplates "**any** communication equipment that is used as a link between parties in physically separate locations" and, as the trial court aptly pointed out, the definition specifically includes telephones and facsimiles. Pa.R.Crim.P. 103 (emphasis added); Trial Ct. Op. at 6 n.1. Furthermore, Rule 203(C) provides that an affiant may "communicate with the issuing authority in person, by telephone, **or** by any device which allows for simultaneous audio-visual communication." Pa.R.Crim.p. 203(C) (emphasis added). Accordingly, no relief is due on Appellant's claim.

Next, Appellant argues that Detective Triana failed to promptly file the executed search warrant, receipt, and inventory with either District Justice Bizzarro (the issuing authority), District Justice DiPaolo, or District Justice Beveridge (his successor), in violation of Pa.R.Crim.P. 209. Appellant further avers that District Justice Bizzarro failed to file the search warrant with the clerk of courts, as required by Pa.R.Crim.P. 210. Additionally, Appellant reasons that District Justice Bizzarro's failure to include an expiration time on the search warrant rendered the warrant invalid. He contends that excusing

these violations of the Rules would render the Rules meaningless. No relief is due.

Rule 209 provides:

(A) The law enforcement officer executing the search warrant shall return the search warrant promptly after the search is completed, along with any inventory required under paragraph (C), to the issuing authority.

\* \* \*

(C) An inventory of items seized shall be made by the law enforcement officer serving a search warrant. . . . The inventory shall be returned to and filed with the issuing authority.

Pa.R.Crim.P. 209(A), (C). Rule 210 states:

The judicial officer to whom the warrant was returned shall file the search warrant, all supporting affidavits, and the inventory with the clerk of the court of common pleas of the judicial district in which the property was seized.

Pa.R.Crim.P. 210.

This Court has stated:

In **Commonwealth v. Mason**, . . . 490 A.2d 421 ([Pa.] 1985), [the Pennsylvania Supreme Court] held that suppression of evidence was an inappropriate remedy for a violation of the Rules of Criminal Procedure relating to the issuance and execution of a search warrant outside of a police officer's primary jurisdiction where said violation did not implicate fundamental, constitutional concerns, was not conducted in bad faith or did not substantially prejudice the accused in the sense that the search would not otherwise have occurred or would not have been as intrusive. Automatic exclusion of evidence obtained by searches accompanied by relatively minor infractions of the rules of criminal procedure would be a remedy out of all proportion to the violation, or to the benefits gained to the end of obtaining justice while preserving individual liberties.

**Commonwealth v. Hilliar**, 943 A.2d 984, 991-92 (Pa. Super. 2008) (citation

omitted).

The trial court denied relief on Appellant's claims as follows:

The procedural defects in the search warrant did not implicate [Appellant's] fundamental, constitutional concerns, was not conducted in bad-faith, nor did it substantially prejudice [Appellant], therefore exclusion was not the appropriate remedy. **See** . . . **Mason**, [490 A.2d at 406-07].

[Appellant] complains that: . . . 2. The warrant does not restrict the time in which it must be executed; 3. The warrant and inventory was not returned to the district justice by police; [and] 4. The district justice f[a]iled to file the warrant and inventory with the Clerk of Courts . . . .

\* \* \*

Second, we find that although the search warrant was left blank as to when it was required to be executed, it was actually executed within a few hours of being issued. Therefore, there are no due process concerns.

Third, we . . . credit Detective Triana's testimony that he did indeed return the warrant to the district justice pursuant to his usual practice of placing the warrant in the Warrant Officer's Box at the police station for delivery to the district justice office. [**See** N.T. Suppression H'rg at 15.]

Fourth, while we accept the letters from the Clerk's Office and District Justice Bever[id]ge's office that they did not possess a copy of the warrant or inventory in this case, we are convinced by the credible testimony of Detective Jason Triana that he appropriately obtained the warrant via facsimile and over the phone, through District Justice Bizzarro.[ ] . . . He placed the warrant in the Warrant Officer's Box at the police station for return to the appropriate district justice, which would have been District Justice DiPaolo.

At the evidentiary hearing this Court took judicial notice that several months after the warrant was issued there was an acrimonious change of administration between District Justice DiPaolo and District Justice Beveridge in January of 2018. The Court also took notice of a subsequent lawsuit filed by DiPaolo

against Beveridge. Needless to say, we can extrapolate from these facts that the transition of personnel and possibly files did not proceed smoothly, from one district justice to the next. While this does not excuse the aberration from the Rules of Criminal Procedure, designed to protect the due process rights of defendants, we find that this may provide a legitimate explanation for the fact that the warrant was not filed with the Clerk of Courts pursuant to Pa.R.Crim.P. . . . 210.

In light of the fact that the warrant and inventory were produced at the hearing, served on [Appellant] at the police station, and ostensibly returned to the issuing magistrate through the usual method of delivery, we do not find any bad-faith or substantial prejudice to [Appellant]. Consequently, the prevailing legal precedent constrains us from excluding or suppressing evidence for a technical failure to comply with a procedural rule. ***Commonwealth v. Gentile***, 632 A.2d 573 (Pa. Super. 1993) (a technical failure to comply with a rule will not automatically result in the exclusion of evidence seized); ***Mason***, [490 A.2d] at 406-407 (exclusion or suppression of evidence is not an appropriate remedy for every violation of the Rules of Criminal Procedure concerning searches and seizure).

Trial Ct. Op. at 5-7.

Appellant's argument on appeal wholly ignores this extensive discussion by the trial court. Appellant also omits any discussion of Detective Triana's testimony – presented at the suppression hearing - which the court credited. Significantly, Appellant does not contest the court's conclusion that his due process and fundamental rights were not violated. We defer to the trial court's credibility findings and do not disturb its conclusion that in this particular case, the technical violations of Rules 209 and 210 did not warrant suppression. ***See Fudge***, 213 A.3d at 326; ***Hilliar***, 943 A.2d at 991-92.

Finally, Appellant avers that the four corners of the affidavit of probable cause reveals "that the credibility of [P.T.] is in question because there has

not been established, as is required when using such individuals, that [he is] reliable." Appellant's Brief at 5-6. Appellant contends that P.T. was not a "true" confidential informant, but instead "merely an anonymous source" "who the police met that day and had never used before."[6] *Id.* at 6.

This Court has stated:

[T]he question of whether probable cause exists for the issuance of a search warrant must be answered according to the "totality of the circumstances" test . . . . The task of the magistrate acting as the issuing authority is to make a "practical, common sense assessment" of whether, "given all the circumstances set forth in the affidavit," a "fair probability" exists that contraband or evidence of a crime will be found "in a particular place." . . .

. . . The duty of the reviewing court is simply to verify that the issuing magistrate had a "substantial basis for concluding that probable cause existed." The uncorroborated hearsay of an **unidentified** informant may be accepted as a credible basis for issuing a search warrant if the affidavit of probable cause avers circumstances that support the conclusion that the informant was credible. In assessing an informant's reliability, a presumption exists that the information is trustworthy when it has been provided by an identified witness. . . .

. . . Probable cause is based on a finding of probability and does not require a *prima facie* showing of criminal activity. Both the reviewing court and this Court must accord deference to a magistrate's finding of probable cause.

***Commonwealth v. Huntington***, 924 A.2d 1252, 1255-56 (Pa. Super. 2007)

(citations omitted and emphasis added).

---

[6] Appellant cites no legal authority in support of this issue. We remind counsel that the argument shall include "discussion and citation of authorities as are deemed pertinent," and that the failure to comply may result in waiver. ***See*** Pa.R.A.P. 2119(a); ***Commonwealth v. Patterson***, 180 A.3d 1217, 1229 (Pa. Super. 2018).

Here, the trial court found sufficient probable cause in the four corners of the affidavit "because the information provided by the confidential informant was corroborated by police observations during the controlled buy." Trial Ct. Op. at 3. In focusing on a presumption — not supported by any further explanation — that the police "had never used [P.T.] before," Appellant ignores significant portions of the affidavit of probable cause. Particularly, we consider that P.T.'s text messages with the person he called "Black" indicated Appellant's name; the time stamps and content of the text messages corresponded with Detective Triana's observations of P.T. visiting Appellant's residence and immediately thereafter preparing to take heroin; and P.T.'s person and vehicle were thoroughly searched before and after the controlled buy and no contraband, except the heroin purchased from Appellant, was recovered. Additionally, Appellant wholly overlooks that the affidavit of probable cause described Detective Triana's trash pull, which yielded bills bearing Appellant's name and address and sandwich baggies that tested positive for cocaine. Given the totality of these circumstances, the trial court did not err in finding the affidavit established sufficient probable cause. *See Huntington*, 924 A.2d at 1255-56.

In sum, we conclude the trial court did not err in finding the search warrant was valid and in denying Appellant's motion to suppress. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/11/2020</u>