J-S20011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID SWEEZER | : | |
| | : | |
| Appellant | : | No. 1168 MDA 2024 |

Appeal from the Judgment of Sentence Entered July 10, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0001977-2022

BEFORE: OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:                **FILED: AUGUST 25, 2025**

Appellant, David Sweezer, appeals from the judgment of sentence entered on July 10, 2024, following his jury trial conviction for persons not to possess a firearm.[1] We affirm.

The trial court summarized the facts of this case as follows:

From December 20, 2021, until June 2, 2022, Agent Justin Johnston ("Agent Johnston") [served as] Appellant's parole agent. Agent Johnston supervised Appellant on one case of possession with intent to distribute [narcotics] and a case of aggravated assault with a deadly weapon. On May 10, 2022, Agent Johnston met with Appellant at the parole office to sign a new home provider agreement for [a boarding home where Appellant rented a room on South Street] ("the Residence"). On June 2, 2022, Agent Johnston went to the Residence along with Agent Christopher Hall ("Agent Hall"), intending to conduct a search because [Agent Johnson suspected] that there were narcotics or parole violations within the Residence. When Agents Johnston and Hall arrived at the Residence, they saw the landlord sitting

---

[1]  18 Pa.C.S.A. § 6105(a)(1).

outside. They approached him and asked if the Appellant was at home and the landlord indicated that he was upstairs. The Agents entered the Residence with no objection from the landlord and proceeded to go upstairs towards Appellant's room. Agents Johnston and Hall heard some rustling from behind one of the doors at the top of the stairs[; the agents then knocked, announced themselves,] and asked that Appellant come to the door. Appellant came to the door and was immediately detained due to Agent Johnston having obtained pre-authorization from his supervisor. Once Agent Johnston had detained Appellant, he explained to him they were going to search his residence. After being told this, Appellant informed Agent Johnston that the room he was found in ("Room 2") was not his room, but the room at the end of the hall was the one he was staying in ("Room 3"). However, at some point [during] the search of the Residence, Appellant changed his story to state that he was living in Room 2, and not in Room 3 as he had initially stated.

Agent Johnston asked Appellant if he would find anything illegal in Room 2 and Appellant informed Agent Johnston there would be a small amount of narcotics found underneath the bed. Upon searching Room 2, Agent Johnston found the narcotics under the bed as Appellant had stated, along with a digital scale. Agent Johnston also observed the closet of Room 2 was full of women's clothing and did not recall seeing any men's clothing in the room, nor did he see anything in the room with Appellant's name on it. Along with Appellant, there was a female in Room 2 when Agent Johnston arrived[. At] some point during the search, the female went to Room 3, along with Agent Hall, so that she could get some of her belongings. When Agent Hall went to Room 3 with the female, he noticed men's clothing and belongings in the room, which she stated belonged to her boyfriend, but would not give Agent Hall his name. While Agent Hall was in Room 3 with the female, he was able to observe a hospital entrance badge with [] Appellant's name on it stuck to the mirror along with a distinct butterfly sticker at the top of the mirror.

After the female finished [collecting] her belongings in Room 3, Agent Hall accompanied her back to Room 2. Once there, [Agent Hall] picked up a cell phone that was in Room 2 and asked Appellant if it was his phone, to which Appellant told him it was. When he seized the phone, he checked the pictures on the phone and found about nine (9) pictures Appellant had taken of himself in a mirror holding a silver revolver. Agent Hall noticed the mirror in the pictures had a distinct butterfly sticker, the same sticker he

had seen on the mirror in Room 3.  After looking at the photos on the phone, Agent Hall went back to Room 3 and stood in front of the mirror in the same place where the pictures were taken.  He then looked between the mattress and the [box] spring in Room 3 and found the silver revolver that was in the pictures.  Appellant said that he [did not possess] the firearm, [and] he had only taken pictures with it.

Trial Court Opinion, 1/16/2025, at 2-4 (record citations omitted; original footnote incorporated).

On June 5, 2024, a jury trial commenced.  On June 6, 2024, the jury found Appellant guilty of the aforementioned crime.[2]  On July 10, 2024, the trial court sentenced Appellant to seven-and-a-half to 15 years of imprisonment, with 770 days of credit for time-served.  Appellant filed a post-sentence motion on July 22, 2024.  On July 24, 2024, the trial court entered an order denying post-sentence relief.  This timely appeal resulted.[3]

Appellant presents a sole appellate issue for our review:

_____

[2]  Appellant was also charged with receiving stolen property, possession of a controlled substance, and possession of drug paraphernalia.  18 Pa.C.S.A. § 3925(a), 35 P.S. § 780-113(a)(16), and 35 P.S. § 780-113(a)(32), respectively.  The Commonwealth moved to dismiss these charges following the jury verdict.  The trial court dismissed the remaining charges by order entered on July 10, 2024.

[3]  On August 5, 2024, Appellant filed a timely notice of appeal.  On August 22, 2024, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Appellant initially filed a timely *pro se* notice of appeal.  After the appointment of counsel, appointed counsel filed a motion to amend Appellant's concise statement.  The trial court granted relief and counsel for Appellant filed a timely, amended Rule 1925(b) statement.  Thereafter, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 16, 2025.

A. Whether the Commonwealth failed to establish sufficient evidence to prove beyond a reasonable doubt the crime of persons not to possess [a firearm] when there was no direct or circumstantial evidence to prove this [crime] was committed by [] Appellant?

Appellant's Brief at 5 (unnecessary capitalization omitted).

Appellant argues that the Commonwealth failed to prove that he was in possession or constructive possession of the recovered firearm. *Id.* at 12-13. Appellant contends that the Commonwealth "never established that [the] rear room where the firearm was located was being used by [A]ppellant in any way, or even accessible to [A]ppellant [or] that the firearm in the picture was in fact the firearm found in the room [or] even an actual firearm." *Id.* at 10. More specifically, Appellant posits that "the Commonwealth was unable to establish which of the two (2) bedrooms [A]ppellant [occupied as a resident]." *Id.* at 14. Appellant maintains that the unknown female who was present during the search told officers that she and her boyfriend occupied the room where the firearm was located. *Id.* at 15. Appellant argues that "[m]en's shoes were located in the rear room, yet neither state parole agent felt it was prudent to ascertain if the shoes fit [A]ppellant's feet." *Id.* According to Appellant, only "the Reading Hospital visitor badge from approximately a month earlier [] stuck to the mirror" connected him with the bedroom where the firearm was recovered. *Id.* Finally, Appellant maintains that the forensic, DNA evidence taken from the firearm and presented by the Commonwealth at trial was "wholly unreliable" because "two different sources of contamination occurred during the investigation and processing of the physical evidence"

when the police handled the firearm without gloves and the DNA serologist

"added his own DNA" to the sample he tested. *Id.* at 16.

We adhere to the following standard of review and legal precepts:

Our standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Furthermore, the trier of fact, [] is free to believe, all, part, or none of the evidence presented when making credibility determinations. *Commonwealth v. Beasley*, 138 A.3d 39, 45 (Pa. Super. 2016). In deciding a sufficiency of the evidence claim, this Court may not reweigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Williams*, 153 A.3d 372, 375 (Pa. Super. 2016).

Illegal possession of a firearm[4] may be established by constructive possession. *Commonwealth v. Parker*, 847 A.2d

---

[4] Here, Appellant was charged with, and convicted of, persons not to possess a firearm pursuant to 18 Pa.C.S.A. § 6105 which specifically provides that "[a] person who has been convicted of an [enumerated] offense[,] within or without this Commonwealth, regardless of the length of sentence [] shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this
*(Footnote Continued Next Page)*

745, 750 (Pa. Super. 2004). With respect to constructive possession, this Court has held:

> When contraband is not found on the defendant's person, the Commonwealth must establish "constructive possession," that is, the power to control the contraband and the intent to exercise that control. ***Commonwealth v. Valette***, 613 A.2d 548 (Pa. 1992). The fact that another person may also have control and access does not eliminate the defendant's constructive possession.... As with any other element of a crime, constructive possession may be proven by circumstantial evidence. ***Commonwealth v. Macolino***, 469 A.2d 132 (Pa. 1983). The requisite knowledge and intent may be inferred from the totality of the circumstances. ***Commonwealth v. Thompson***, 428 A.2d 223 (Pa. Super. 1981).
>
> ***Commonwealth v. Haskins***, 677 A.2d 328, 330 (Pa. Super. 1996), *appeal denied*, 692 A.2d 563 (Pa. 1997). Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. ***Commonwealth v. Mudrick***, 507 A.2d 1212, 1213 (Pa. 1986).

***Commonwealth v. McClellan***, 178 A.3d 874, 878 (Pa. Super. 2018).

Whether physical evidence is present on contraband is solely relevant to whether a defendant was in actual, physical possession of it, but is irrelevant where the Commonwealth proceeds on a theory of constructive

_____

Commonwealth." 18 Pa.C.S.A. § 6105(a). Here, there is no dispute that Appellant was previously convicted of, and subsequently on parole for, aggravated assault and possession with intent to deliver a controlled substance, which are both prohibited, enumerated offenses under Sections 6105(b) and (c)(2), respectively. **See** N.T., 6/5/2024, at 40, *citing* Commonwealth's Trial Exhibit 3 (certified convictions); **see also** N.T., 6/6/2024, at 283 (Appellant testified that he was aware his prior convictions prohibited him by law from possessing a firearm while on parole). Moreover, on appeal, Appellant does not challenge the fact he was previously convicted of an offense enumerated under Section 6105.

possession. ***Commonwealth v. Fudge***, 213 A.3d 321, 329 (Pa. Super. 2019)

(citation omitted).

Here, the trial court determined:

[T]he evidence presented by the Commonwealth demonstrated that Appellant was in constructive possession of the firearm and was prohibited from possessing that firearm. Upon arriving at the Residence, Appellant initially identified Room 3 as his, but then changed his story and claimed that he was living in Room 2. When the officers searched Room 2, they found evidence of a female living there but no evidence of a male living there, nor was there any evidence of Appellant living there. However, when officers searched Room 3, they found male clothing, a hospital entrance badge with Appellant's name on it on the mirror, and a silver revolver underneath the mattress on the bed. Further, officers found photographs on Appellant's phone that showed Appellant holding the silver revolver in Room 3. The firearm was located in the room that Appellant had initially identified as his and where a hospital entrance badge with his name was located on the mirror. Therefore, although the firearm was not located on Appellant['s person], the evidence, accepted in the light most favorable to the Commonwealth, established that Appellant had both the power and intent to control the firearm. The jury could and did determine that all the elements of persons not to possess a firearm had been established beyond a reasonable doubt. Appellant is not entitled to relief.

Trial Court Opinion, 1/16/2025, at 6-7 (record citations and unnecessary capitalization omitted).

Based upon our standard of review, applicable law, and review of the certified record in this matter, we agree with the trial court's assessment. Initially, we note that the record belies Appellant's assertion that the Commonwealth failed to prove that the room where the firearm was recovered was being used by Appellant or accessible to him. ***See*** Appellant's Brief at

10. Here, a parole agent testified that "after initially stating he was residing in the rear bedroom, room number three in this instance, [Appellant] changed his story to state that he was actually, in fact living in room two[.]" *See* N.T., 6/5/2024, at 56; *see also id.* at 70 ("He actually told me that he was in the process of switching rooms."). During the course of the search by parole agents, Appellant admitted that he was in the process of switching rooms and that he resided in Room 3. Moreover, the jury was presented with nine photographs of Appellant posing with a silver revolver in a mirror with both a distinct butterfly sticker and a hospital name badge with a photograph of Appellant affixed to it.[5] That mirror was located in Room 3, the bedroom where the firearm was ultimately recovered. Thus, the jury was free to infer that Appellant possessed the firearm in Room 3 at a time when he enjoyed authority to affix his property to the furnishings within that room. The fact that another person may also have control and access does not defeat Appellant's constructive possession. The Commonwealth also entered the recovered firearm into evidence at trial. As such, the jury was free to inspect and discern whether the recovered firearm and the firearm in the photographs

_____

[5] As previously mentioned, the search was conducted on June 2, 2022. The photographs were time-stamped on May 4, 2022. *See* Commonwealth's Exhibit 2; N.T., 6/6/2024, at 363. The hospital badge was dated May 5, 2022. *See* Commonwealth's Exhibit 2; N.T., 6/5/2024, at 111. As such, there was evidence that Appellant had access and control of Room 3 less than a month prior to the search.

were the same firearm.[6] In short, the record contains sufficient evidence to demonstrate that Appellant had control and the intent to exercise control over the contraband found in Room 3.

The Commonwealth proceeded on a theory of constructive possession and whether there was physical evidence present on contraband was solely relevant to whether a defendant was in actual, physical possession of it. Regardless, the Commonwealth admitted that the recovery of the physical evidence and chain of custody should have been handled differently and conceded that it was "possible that [the arresting officer] had some of [Appellant's] DNA on his hand and then touched the firearm and transferred [Appellant's] DNA from his hand to that firearm" as testified by the serologist. N.T., 6/6/2024, at 325. The jury was free to assess the DNA evidence presented and we may not usurp their determination.

Based upon the totality of the circumstances and the evidence presented at trial, we conclude that the Commonwealth proved that Appellant had the requisite knowledge and intent for constructive possession of the recovered firearm. As such, there was sufficient evidence to support his conviction for persons not to possess a firearm. Hence, he is not entitled to appellate relief.

_____

[6] At trial, Appellant testified in his own defense. *See* N.T., 6/5/2024, at 252-293. More specifically, Appellant testified that the firearm in the nine photographs was not a real weapon and that, instead, he was holding a cigarette lighter that looked like a gun. *Id.* at 272-273 ("I thought it was cool, and I took a couple of pictures with it because it looked so real."). The jury was free to reject this evidence.

Judgment of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 8/25/2025